UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A MENDAROS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, et al.,<br><br>　　　　Defendants. | Case No.16-cv-06092-HSG<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 9, 12 |

Plaintiff Mark A. Mendaros filed the instant case against Defendants JPMorgan Chase Bank, N.A., Select Portfolio Servicing, Inc., Deutsche Bank National Trust Co., in its capacity as trustee for the Long Beach Mortgage Loan Trust 2006-11, and James E. Albertelli, PA dba ALAW ("ALAW") (collectively "Defendants") in San Francisco County Superior Court on September 12, 2016. Defendants JPMorgan and Deutsche Bank removed this action on October 21, 2016, on the basis of diversity jurisdiction. Dkt. No. 1. Defendants have moved to dismiss the complaint based on the doctrine of *res judicata* and for failure to state a claim. Dkt. Nos. 9, 12. For the reasons detailed below, the Court GRANTS the motions to dismiss.

**I.　BACKGROUND**

Plaintiff's complaint alleges twelve causes of action against Defendants related to the foreclosure and sale of his personal residence (the "Property") located in San Francisco, California. Dkt. No. 1-2.

**A.　Factual Allegations**

According to the Complaint, Plaintiff obtained a mortgage loan (the "Note") secured by the Property from First Allied Funding on October 16, 2006. *Id.* ¶ 48. This mortgage was secured by a deed of trust, also dated October 16, 2006. *Id.* ¶¶ 48–49. First Allied assigned Plaintiff's loan to

1  Long Beach Securities Corporation. *Id.* ¶ 87. In November or December 2006, Long Beach Securities Corporation, in turn, bundled Plaintiff's mortgage into the Long Beach Mortgage Loan Trust 2006-11 (the "Trust") — a mortgage-based securities trust set up under Delaware law. *Id.* Long Beach Securities Corporation then sold securities certificates to multiple investors. *Id.* Plaintiff alleges that the assignment to the Trust did not conform with California law because the transfer of the Note was not properly endorsed and the assignment of the Deed of Trust was not recorded. *Id.* ¶ 88. Plaintiff similarly argues that First Allied and Long Beach Securities Corporation breached the Trust's Pooling Services Agreement ("PSA") when they failed to assign the Note and Deed of Trust to the trustee by the Trust's closing date. *Id.* ¶ 98. Consequently, Plaintiff argues, this sale and all subsequent assignments were improper. *Id.* ¶¶ 66, 88, 98. Because of the "break in the chain of title," the new beneficiary in and real party in interest to the mortgage are undocumented and unknown. *Id.* ¶ 98. According to Plaintiff, Defendants unlawfully foreclosed on and sold the Property in 2014.

### B. Procedural History

Following the foreclosure sale, Plaintiff filed an action in San Francisco Superior Court on October 28, 2014, seeking to set aside the foreclosure sale and quiet title to the Property (the "First Action"). *See* Dkt. 12-1, Exs. A, B (*Mendaros v. First Allied Funding, Deutsche Bank National Trust Co.*, No. CGC-14-542418 (San Francisco Superior)). Deutsche Bank demurred to the complaint three times and the court granted Plaintiff two opportunities to amend the complaint. *See id.*, Exs. C–G. After Plaintiff failed to fix the deficiencies, the court entered judgment in favor of Deutsche Bank on October 17, 2016. *See id.*, Exs. H, I.

While the First Action was still pending, Plaintiff filed the instant action (the "Second Action") in September 2016. Dkt. No. 12-1, Ex. B. Defendants Deutsche Bank and JPMorgan removed the Second Action to federal court on October 21, 2016. Plaintiff alleges twelve causes of action against Defendants premised on allegedly faulty assignments from First Allied to the Trust.

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint for failing to state a claim upon which relief

2

can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, the Court does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### III. ANALYSIS

Defendants move to dismiss Plaintiff's complaint on numerous grounds, including that the doctrine of *res judicata* bars Plaintiff's claims and that the complaint otherwise fails to state a claim upon which relief can be granted. The Court first addresses Defendants' *res judicata* argument and then addresses Plaintiff's remaining claims.

#### A. *Res Judicata*

Defendants Deutsche Bank, ALAW, and Select Portfolio argue that the doctrine of *res judicata* bars Plaintiff's claims against them. *See* Dkt. Nos. 12, 26. To determine the preclusive effect of the San Francisco Superior Court judgment in this case, the Court applies California law.[1] Under California law, the doctrine of *res judicata*, or claim preclusion,[2] "acts to bar claims that

---

[1] Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must "apply the *res judicata* rules of a particular state to judgments issued by courts of that state." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). Thus, the Court applies "California law of *res judicata* to the California judgment" at issue in this case. *See id.* at 322.
[2] The California Supreme Court has acknowledged that courts have historically been "inconsistent" when "discussing the preclusive effect of judgments," sometimes conflating claim

3

were, or should have been, advanced in a previous suit involving the same parties." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (Cal. 2015). To invoke the doctrine, Defendants must establish that the second suit involves (1) the same cause of action; (2) between the same parties; (3) after a final judgment on the merits in the first suit. *DKN Holding*, 61 Cal. 4th at 824. The Court finds that these requirements are met for Defendants Deutsche Bank and ALAW.

### 1. Same Cause of Action

"*Res judicata* precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 897 (Cal. 2002). Yet California courts do not require that the claims in the first and second lawsuit be identical. Rather, courts employ the "primary right" theory, which defines "cause of action" as comprising "a primary right of the plaintiff, a corresponding primary duty of the defendant, and a wrongful act by the defendant constituting a breach of that duty." *Id.* at 904. The emphasis is on the harm the plaintiff suffered rather than the legal theory the plaintiff advanced or the remedy he sought. *Id.* "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." *Id.* (quotation omitted); *cf. Interinsurance Exch. of the Auto. Club v. Superior Court*, 209 Cal. App. 3d 177, 182, 257 (Cal. Ct. App. 1989) ("The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background.").

Here, Plaintiff's First and Second Action both seek to redress the same injury — wrongful foreclosure. Although Plaintiff asserted multiple theories of recovery in the First Action, and seeks to allege more in the Second, all the harm Plaintiff alleges that he suffered resulted from the invasion of the his right not to be deprived of ownership or possession of his home through wrongful foreclosure. This prong is met.

---

and issue preclusion. *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (Cal. 2015). Here, the Court refers to *claim preclusion*.

### 2. Final Judgment on the Merits

Plaintiff opposes the application of *res judicata* because the prior action was dismissed, rather than adjudicated on the merits.[3] *See* Dkt. No. 28 at 8. The Court finds this argument unpersuasive. In California, a state court's order sustaining a general demurrer constitutes a final judgment on the merits. *See Goddard v. Security Title Ins. & Guar. Co.*, 14 Cal. 2d 47, 52 (Cal. 1939) ("A judgment given after the sustaining of a general demurrer on a ground of substance . . . may be deemed a judgment on the merits, and conclusive in a subsequent suit . . . ."); *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993) (same). Plaintiff provides no authority to the contrary.

It is undisputed that the San Francisco Superior Court sustained Deutsche Bank's demurrer without leave to amend, dismissed the case with prejudice, and entered judgment in favor of Deutsche Bank and against Plaintiff in the First Action. Dkt. No. 12-1, Exs. H, I. On this basis, the second prong is met.

### 3. Same Parties

*Res judicata*, unlike issue preclusion, can only be raised by one who was a party or in privy with that party in the first suit. *DKN Holdings*, 61 Cal. 4th at 824. There is some overlap here in the parties named in the First and Second Action. Both Deutsche Bank and ALAW were parties in the First Action. *Res judicata*, consequently, bars Plaintiff from re-litigating these same claims against both Deutsche Bank and ALAW.

However, JPMorgan and Select Portfolio were not parties to the First Action. Nor have Defendants adequately explained why they should be considered the same parties or in privity with Deutsche Bank and ALAW. Defendants nominally point to *Bernhard v. Bank of Am. Nat. Trust & Sav. Ass'n*, 19 Cal. 2d 807, 813 (Cal. 1942), in which the California Supreme Court stated that "it would be unjust to permit one who has had his day in court to reopen identical issues by

---

[3] The Court notes that Plaintiff filed his opposition to Deutsche Bank and Select Portfolio's motions over a week late. *See* Civil L.R. 7-3 (opposition filed not less than 21 days before the hearing date). Defendants do not claim prejudice from delay. The Court has considered the opposition, but reminds counsel that failure to comply with future deadlines may result in sanctions.

5

merely switching adversaries." *Bernhard v. Bank of Am. Nat. Trust & Sav. Ass'n*, 19 Cal. 2d 807, 813 (Cal. 1942). Yet *Berhnard* was an issue preclusion case. And the California Supreme Court recently clarified that "[i]n accordance with due process, [claim preclusion] can be asserted only against a party to the first lawsuit, or one in privity with a party." *DKN Holdings*, 61 Cal. 4th at 824. Accordingly, *res judicata* does not bar Plaintiff from litigating claims against JPMorgan and Select Portfolio.

### B. State Law Claims

Because *res judicata* does not bar Plaintiff's claims against JPMorgan and Select Portfolio, the Court addresses Plaintiff's state law claims alleged against them. Plaintiff alleges that only First Allied — as the original lender — had authority to foreclose on the Property. Plaintiff brings several causes of action on this basis, claiming that the Note and Deed of Trust were not properly assigned or otherwise transferred to Defendants from First Allied. As a result, Plaintiff alleges that Defendants wrongfully foreclosed, committed fraud, and violated California Civil Code § 2924(a)(6) and California Business and Professions Code §§ 17200 *et seq*.

#### 1. Judicial Estoppel

As a preliminary matter, JPMorgan argues that Plaintiff is judicially estopped from challenging JPMorgan's interest in the Property because Plaintiff recognized JPMorgan as a creditor in two bankruptcy actions and failed to include these claims against it in his bankruptcy schedules. *See* Dkt. No. 9-9 (*In re Mark Mendaros*, No. 10-34678 (Bankr. N.D. Cal.)); Dkt. No. 9-10 (*In re Mark Mendaros*, No. 11-30597 (Bankr. N.D. Cal.)).

The equitable doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001); *see also Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir.1996) ("[F]ederal law governs the application of judicial estoppel in federal court."). The Court may analyze the following non-exhaustive factors to determine whether the doctrine applies: (1) whether a party's current litigation position is "clearly inconsistent" with an earlier position it has taken; (2) whether a court accepted and relied upon the party's earlier position; and (3) whether the party seeking to now

assert the inconsistent position would derive an unfair advantage if not estopped from doing so. *Id.* at 750–51. And because judicial estoppel is an equitable doctrine, courts in the Ninth Circuit also consider "whether the party to be estopped acted inadvertently or with any degree of intent." *See Johnson v. Oregon Dep't of Human Resources Rehab. Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998).

Plaintiff first filed a petition for Chapter 7 bankruptcy *pro se* in November 2010. *See* Dkt. No. 9-9. The bankruptcy court dismissed the case in January 2011 without issuing any discharge order. *In re Mark Mendaros*, No. 10-34678 (Bankr. N.D. Cal.), Dkt. No. 18. Plaintiff then retained counsel and filed a second petition for Chapter 7 bankruptcy in February 2011. *See* Dkt. No. 9-10. In his bankruptcy Schedule D, Plaintiff identified "Chase" as a mortgage creditor. *In re Mark Mendaros*, No. 11-30597 (Bankr. N.D. Cal.), Dkt. No. 1 at 13. Plaintiff further stated that he intended to "reaffirm the debt" secured by the Property. *Id.* at 33. Plaintiff did not, however, list any claims against JPMorgan or the other Defendants.

The Court questions whether Plaintiff's position in the bankruptcy court was "clearly inconsistent" with his position now. Both in the bankruptcy court and in this case, Plaintiff acknowledges the mortgage on the Property. The key issue in this litigation, however, is whether the proper party followed the proper steps in foreclosing on it. Even assuming Plaintiff successfully advanced a "clearly inconsistent" position in bankruptcy court against JPMorgan, there are no facts, alleged or otherwise judicially noticeable, that suggest that Plaintiff knew about these potential claims before the bankruptcy court discharged his debt in August 2011. To the contrary, taking Plaintiff's allegations as true, it would have been impossible for Plaintiff to know about his claims at that time because they arose out of the alleged wrongful foreclosure, which did not occur until several years later. No one recorded a notice of default until January 2013. Dkt. No. 12-1, Ex. O. And no one recorded a notice of trustee's sale until May 2013. *Id.*, Exs. P, Q. The Property was not actually sold until February 2014. *Id.*, Ex. T. JPMorgan offers no reason why Plaintiff should have questioned the validity of the mortgage assignments before foreclosure proceedings began. Moreover, as discussed in more detail below, the California Supreme Court did not confirm that borrowers have standing to challenge void mortgage assignments until 2016.

*See Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (Cal. 2016). The Court consequently finds that judicial estoppel is inapplicable given the record before it.

### 2. Standing

Defendants next contend that Plaintiff lacks standing to bring a foreclosure challenge to Defendants' interest in the mortgage and their standing to foreclose. The Court finds that Plaintiff has not alleged sufficient facts to demonstrate he has standing to sue.

Under *Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919 (Cal. 2016), third parties may challenge a foreclosure only if they allege errors rendering an aspect of the assignment of their debt void, not just voidable. *Id.* at 936–42; *see also Glaski v. Bank of Am., Nat'l Ass'n*, 218 Cal. App. 4th 1079, 1099 (Cal. Ct. App. 2013) (plaintiff must allege the "specific grounds for his theory that the foreclosure was not conducted at the direction of the correct party."). This is because "[u]nlike a voidable transaction, a void one cannot be ratified or validated by the parties to it even if they so desire." *Id.* at 936. Here, however, the specific errors that Plaintiff raises would, at most, make the transfer of the debt voidable.

First, Plaintiff alleges that Defendants violated the PSA governing the securitization of Plaintiff's mortgage because First Allied failed to assign the Note before the closing date of the Trust, rendering all further assignments similarly invalid. Dkt. No. 1-2 ¶¶ 14, 97–98; Dkt. No. 28 at 2–4; 10–11; Dkt. No. 29 at 2–4; 9–10. Plaintiff relies heavily on *Glaski v. Bank of America*, which held that where a trustee accepts a note and mortgage after the date the trust closed, the acceptance is void under New York trust law. 218 Cal. App. 4th at 1097. The Court's holding in *Glaski* relied on a provision of New York's Estates, Powers & Trusts Law, which provides: "If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust . . . is void." *Glaski*, 218 Cal. App. 4th at 1096 (quoting N.Y. Est. Powers & Trusts Law § 7-2.4). The Trust in the instant matter, however, is governed by Delaware law, not New York law. *See* Dkt. No. 1-2 ¶ 67. Plaintiff has not identified any authority interpreting Delaware trust law to find an assignment after a closing date void rather than voidable. And even if *Glaski's* reasoning could have broader implications, "an overwhelming majority" of courts have criticized and rejected its interpretation of New York trust

8

law, holding instead that acts in contravention of the trust instrument are merely voidable. *See Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal. App. 5th 802, 805 (2016) ("New York law, as interpreted by an overwhelming majority of New York, California, and federal courts, [] provides that defects in the securitization of loans can be ratified by the beneficiaries of the trusts established to hold the mortgage-backed securities and, as a result, the assignments are voidable.") (collecting cases). The Second Circuit held that such an improper transfer renders an assignment merely voidable. *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 88 (2d Cir. 2014). And the Ninth Circuit has since followed *Rajamin* in two unpublished memorandum dispositions. *See Morgan v. Aurora Loan Servs., LLC*, 646 Fed. App'x 546, 550 (9th Cir. 2016) (citing *Rajamin*, 757 F.3d at 87–90); *see also Banares v. Wells Fargo Bank, NA*, 2017 WL 943934, at *1 (9th Cir. Mar. 10, 2017).[4] If Plaintiff believes Delaware law differs from New York law such that a late assignment would be void under Delaware law, he should clearly explain this with legal authority in his amended complaint. The Court, however, finds no basis to conclude that the allegedly defective assignment was void rather than merely voidable under Delaware law.

Second, Plaintiff suggests that some assignments were void because they were "robo-signed." *See* Dkt. No. 1-2 ¶¶ 14, 37–38, 45. Plaintiff states that "[t]his is the case where Defendants by using 'ROBO-SIGNERS' typically with titles such as *'Vice President'* and *'Assistant Secretary'* execut[ed] and or forge[d] foreclosure related documents . . . ." Dkt. No. 1-2 ¶ 37. Even if such conclusory allegations were sufficient, courts applying California law have routinely found that a "robo-signature" does not render the transfer of Plaintiff's debt void because a signature by an unauthorized party on a negotiable instrument is subject to ratification. Cal. Com. Code § 3403(a); *accord Barcarse v. Cent. Mortg. Co.*, 661 F. App'x 905, 906–07 (9th Cir. 2016); *Maynard v. Wells Fargo Bank, N.A.*, No. 12CV1435 AJB JMA, 2013 WL 4883202, at *8 (S.D. Cal. Sept. 11, 2013); *Mendoza*, 6 Cal. App. 5th at 819.

To the extent that Plaintiff suggests Defendants engaged in some other fraud in executing and assigning the foreclosure documents, Plaintiff's allegations fail to give any details that would

---

[4] While these and the other unpublished dispositions cited in this order are not precedent, the Court may consider them for their persuasive value. Fed. R. App. P. 32.1; CTA9 Rule 36-3.

9

satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). These circumstances include the "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quotation omitted); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124.

Because Plaintiff lacks standing under state law to challenge Defendants' ability to foreclose, the Court DISMISSES Plaintiff's second through sixth, and eighth through twelfth causes of action for: wrongful foreclosure; lack of standing; violations of California Civil Code §§ 2924.17, 2937 *et seq.*; fraud in the inducement; deceptive business practices; intentional infliction of emotional distress; slander of title, and quiet title, all of which are premised on Plaintiff's theory that Defendants lacked standing to foreclose due either to failed securitization or fraudulent assignment documents. Plaintiff may amend, but the Court cautions Plaintiff not to repeat allegations otherwise foreclosed by post-*Yvanova* case law.

### 3. Breach of Contract

Plaintiff alleges that Defendants breached the security agreement by failing to give proper notice to Plaintiff before recording the notice of default. *See* Dkt. No. 1-2 ¶¶ 101–04. To establish a breach of contract, Plaintiff must allege: (1) the existence of a contract; (2) Plaintiff's performance or excuse for non-performance; (3) Defendants' breach; (4) and damages to Plaintiff therefrom. *See Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008). However, Plaintiff fails to properly allege the second and fourth elements. He does not adequately allege facts to excuse his failure to pay. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* 222 Cal. App. 3d 1371, 1389 (Cal. Ct. App. 1990) (holding that a plaintiff must

10

plead excuses for non-performance with specificity). Nor does he explain why the foreclosure was caused by Defendants' failure to provide adequate notice rather than his own default under the loan. The Court GRANTS the motions to dismiss this claim.

### 4. Fraud in the Concealment

In addition to alleging that Defendants intentionally misrepresented their ability to foreclose on the Property, which the Court dismisses for lack of standing above, Plaintiff also alleges that Defendants concealed the fact that the loan was securitized.

Under California law, the elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damages." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (Cal. 1996). State-law fraud claims are subject to the heightened pleading standard of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). As discussed in Section III.B.2, Rule 9(b) establishes a heightened pleading standard for all claims that "sound in fraud" or are "grounded in fraud." *Kearns*, 567 F.3d at 1125. Here, Plaintiff does little more than assert that unspecified Defendants securitized the loan and concealed the loan terms. *See* Dkt. No. 1-2 ¶¶ 125–29. As currently pled, Plaintiff's claim also appears to be based on his negotiations and discussions with the original lender, First Allied, who is not named as a Defendant in this action. *See id.* ¶ 129 ("Defendants' failure to disclose the material terms of the transaction induced the Plaintiff to enter into the loan . . . ."). The Court accordingly GRANTS Defendants' motions to dismiss this claim.

### 5. Unfair Competition — Business & Professions Code § 17200

California's Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200 *et seq.*, provides a cause of action for "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200. A UCL claim must be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "This provision requires [a plaintiff] to show . . . a causal connection between" a defendant's alleged UCL violation and Plaintiff's loss of money or property. *Kwikset*

11

*Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (Cal. 2011).

The Court finds that Plaintiff has failed to establish standing to assert a violation of the UCL. Plaintiff does not allege that he lost money or property as a result of Defendants' unfair, unlawful, or fraudulent conduct, rather than his default on the loan. Rather, Plaintiff contends that Defendants were "unjustly enriched" by "engaging in [the] foreclosure process" on the Property. *See* Dkt. No. 1-2 ¶¶ 154–55. The Court accordingly GRANTS Defendants' motion to dismiss this claim.

### 6. Intentional Infliction of Emotional Distress

Plaintiff alleges that he suffered emotional distress as a result of Defendants' conduct in fraudulently foreclosing on his property. To state a claim for intentional infliction of emotional distress, a plaintiff must allege that "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736 (Cal. Ct. App. 2002). "The act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim." *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010); *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. July 16, 2010) (holding that absent specific allegations that the lending party asserted its rights to foreclose in bad faith, an IIED claim will not lie in a foreclosure case). Plaintiff has not made any specific allegations that would support a finding that Defendants committed any "outrageous conduct." Thus, Plaintiff's intentional infliction of emotional distress claim is also dismissed.

## IV. CONCLUSION

Because Plaintiff has failed to identify other facts or theories that would avoid application of *res judicata* to his claims against Deutsche Bank and ALAW, the Court finds that it would be futile to grant leave to amend and GRANTS Deutsche Bank and ALAW's motions to dismiss without leave to amend. However, the Court cannot say at this stage that amending the complaint

12

would be futile as to the remaining Defendants.  Plaintiff may still be able to allege sufficient facts to state a claim against them.  The Court consequently GRANTS JPMorgan and Select Portfolio's motions to dismiss with leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (A court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (quotation omitted).  Plaintiff may amend the claims alleged against both JPMorgan and Select Portfolio, but he may not add new claims or new defendants.  Plaintiff shall file his amended complaint by no later than June 30, 2017.

**IT IS SO ORDERED.**

Dated:   May 31, 2017

HAYWOOD S. GILLIAM, JR.
United States District Judge